COLLIER, APPELLANT, *v.* COLLIER, APPELLEE.

(No. 3-85-21—Decided May 11, 1987.)

*Spurlock, Sears, Pry & Griebling* and *James W. Pry II,* for appellant.

*Ryan, Cole & Brown, Thomas L. Cole* and *Raymond G. Fesmier,* for appellee.

EVANS, J. This is an appeal by Elizabeth A. Collier, plaintiff-appellant, from a judgment entered in a divorce proceeding by the Court of Common Pleas of Crawford County.

Appellant and her husband, Wayne H. Collier, appellee, were married in December 1965. Appellant filed for a divorce on July 9, 1981, after fifteen and one-half years of marriage. At the time the parties were married, appellee had completed his training as an optometrist at Ohio State University. Appellant had completed three years of work for a degree.

After appellee was released from the service, the parties settled in Bucyrus in January 1969. In one month, appellee acquired office space, remodeled for his purposes and opened his professional office. For the first two years, appellant worked with her husband at the office without compensation to help him establish his practice. After two years, appellant was able to discontinue her regular assistance at the office. In 1972, appellee formed a partnership with another optometrist. In 1973, a third optometrist joined the firm as an employee.

The parties have two children born during the marriage. Christine Collier was born August 8, 1971 and Marc Matthew Collier was born November 18, 1979. Appellant was given custody of Marc and appellee was given custody of Christine.

At the time the divorce case was filed, appellee was an employee of a professional corporation and was being paid an annual salary of $45,000 per year. The corporate employer also maintained a pension plan and a profit-sharing plan in which appellee was a participant. Appellee owned an undivided one-half interest in the building where his corporate employer carried on its business. Appellee also had other investments in a real estate partnership and various rental units.

Prior to the filing of this divorce case the parties resided on a twenty-acre parcel of wooded land in a large home just outside Bucyrus. Except for brief periods on three occasions, appellant did all housework required and prepared the meals for the family.

Appellant asserts two assignments of error in her appeal as follows:

Assignments of Error

"I. The trial court committed substantial error prejudicial to the appellant which amounted to an abuse of discretion in making an inequitable division of property.

"II. The trial court committed substantial error prejudicial to the appellant in overruling the appellant's motion for a new trial."

We will treat the two assignments of error together, since the second one will obviously stand or fall based on our decision in the first.

At the time this divorce action was filed, the parties owned certain assets which were used by or arose from the profession of appellee. It is the disposition of these assets which is at the heart of appellant's appeal. All other assets were either sold with the net proceeds being divided equally between the parties, or otherwise disposed of by agreement. The assets in question are these:

| | |
|---|---:|
| A promissory note owed by appellee's business associate to the appellee in the amount of | $11,927.12 |
| Appellee's one-half interest in the professional office building rented to the professional corporation known as Drs. Collier and Gortz, Inc. | 34,857.28 |
| Appellee's interest in the pension plan and profit-sharing plan maintained by Drs. Collier and Gortz, Inc. | 123,577.85 |
| Appellee's interest in the professional corporation known as Drs. Collier and Gortz, Inc. | 8,465.60 |
| Total | $178,827.85 |

One-half of this value was awarded to appellant in a series of monthly payments in the amount of $674.24 per month for eleven years without interest.     $89,413.62

We must now examine the division of these assets by the trial court to determine whether or not an abuse of discretion has taken place. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 5 OBR 481, 450 N.E. 2d 1140.

R.C. 3105.18(B) sets out eleven points which the trial court shall consider in establishing an alimony order. A review of these elements in the light of the facts of this case may prove helpful.

"(1) The relative earning abilities of the parties":

The appellant is marginally employable at the present time. She has spent the last sixteen years fulfilling the responsibilities of housewife and mother. Except for helping her husband in the first few years of his practice and holding a part-time job of four years' duration, appellant has had no experience in the job market since her marriage. Appellee, on the other hand, has excellent earning abilities through his profession as an optometrist. The record disclosed that appellee draws a gross salary from his professional corporation in the amount of $45,000 per year. In addition, the efforts of the corporate employees result in sufficient additional income to the corporation to permit it to maintain a pension plan which requires the employer to contribute ten percent of the salaries of all participating employees to the plan annually. The corporation also maintains a profit-sharing plan to which it contributes from time to time, although not on a regular basis.

"(2) The ages, and the physical and emotional conditions of the parties":

The parties are approximately the same age. The record discloses no substantial physical or emotional problems on the part of appellant. Appellee does appear to have some back problems, but they do not appear to affect his ability to earn a living.

"(3) The retirement benefits of the parties":

The record shows that appellant has no retirement benefits, not even social security benefits based on her employment. Appellee has social security benefits based on his professional employment with Drs. Collier and Gortz, Inc. in addition to the pension and profit-sharing funds in the amount of $123,577 presently on deposit for his benefit.

"(4) The expectancies and inheritances of the parties":

The record is silent as to this so the parties must be taken as equal on this point.

"(5) The duration of the marriage":

The record discloses that this marriage lasted for approximately sixteen years.

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home":

In this case, appellant was given custody of the two-year-old son of the parties. The appellee was given custody of the eleven-year-old daughter of the parties. In view of the past practice of this family when they lived together as a unit, it would seem to be more appropriate for appellant to be home with her two-year-old son rather than away from home due to employment.

"(7) The standard of living of the

parties established during the marriage":

The record shows that the parties resided in a large cedar and brick home on a twenty-acre wooded lot at the edge of Bucyrus. Appellee was a successful optometrist in the community. The parties appear to have enjoyed a good standard of living.

"(8) The relative extent of education of the parties":

Appellant had completed three years of college at the time she married appellee. Appellant left school at that time and has not completed her education. Appellee, on the other hand, had completed six years of college at the time of the marriage and was fully trained as an optometrist.

"(9) The relative assets and liabilities of the parties":

Except for the four assets listed above, the remaining assets were divided equally between the parties, either by actual sale of the asset and division of the net proceeds, or by agreement as to value and payment of the one half thereof to appellant. The record does not disclose any significant assets owned by either party except those accumulated during the marriage. The parties owed various amounts on rental properties they owned. These amounts were secured by mortgage and would have been paid off as the properties were sold to complete the division of the marital assets. The only other liability disclosed by the record is the sum of $19,999.99 owed to the mother of appellee which appellee was ordered to pay.

"(10) The property brought to the marriage by either party":

The record shows that the parties were equally endowed with worldly goods as the marriage began.

"(11) The contribution of a spouse as a homemaker":

There is substantial evidence in the record that appellant did her own housework, prepared the family meals, participated in social and professional activities designed to benefit the career of her husband and, in general, was a homemaker who contributed substantially to the marriage.

In addition to these facts, the record also discloses that appellant testified that her living expenses would total $1,800 per month after the divorce, while appellee testified that his living expenses would total $2,100 per month. In the judgment entry of divorce the court analyzed the ability of appellee to pay the monthly amount of $674 to appellant by starting with the net monthly income of appellee and reducing that figure by the full amount of monthly living expenses claimed by appellee. After also deducting monthly child support payments, appellee still has sufficient income remaining to make the required $674 payment to appellant. The record does not disclose any other source of income available to the appellant which would increase her monthly income to approximately the monthly amount claimed by her.

Based on these facts, we find that the award of alimony to the appellant by the trial court was so unreasonable that it constitutes an abuse of discretion. As an optometrist, appellee clearly has the better earning ability of the parties. The retirement benefits of appellee are substantial, while appellant has none. Appellant should be home with her young son until he is through the formative years, at least. Appellant has enjoyed a standard of living during the marriage which will far exceed that which she can provide for herself with $674 per month. Appellant should complete her education if she expects to secure meaningful employment when she enters the job market. Based on the division of the assets, appellee can, and should, do more to assist his former spouse through the period of transition from homemaker

to head of household and working mother.

We find that the trial court abused its discretion in ordering the division of property in this matter in three separate areas. First, we find it to be unreasonable to fail to allow interest on the periodic payments to be made to the appellant over an eleven-year period. Second, we find it to be unreasonable to fail to allow appellant periodic alimony payments sufficient in amount to increase the monthly income of appellant to an amount which would permit her to remain at home with her young son during his formative years. Third, we find it to be unreasonable to assign a value of $8,465 to the interest of the appellee in the professional corporation of Drs. Collier and Gortz, Inc. This figure may represent the value according to the balance sheet, but this valuation fails to recognize the income-producing potential of this asset. The appellee would never agree to sell his interest in his corporation for that amount of money if it meant he could no longer practice his profession.

This court will not presume to exercise the discretion of the trial court in this matter. There are a number of arrangements which would constitute a reasonable division of the property in this case and the trial court is in the best position to make that determination. We suggest, however, that property distributed in monthly payments over a period of eleven years should bear a competitive interest rate. In addition, we suggest that the trial court consider monthly alimony payments to the appellant which will permit her to remain at home with her young son and which will assist her in completing her education.

This case is remanded to the trial court for further proceedings pursuant to this opinion.

The judgment of the trial court constituting the order as to the division of property of the parties is reversed; in all other respects, said judgment is affirmed.

*Judgment reversed in part and affirmed in part.*

Cole, P.J., and Shaw, J., concur.