## Kaufman v. Kaufman
*[Cite as 7 AOA 81]*

*Case No. 9-88-28*
*Marion County, (3rd)*
*Decided October 30, 1990*

*S. Fredrick Zeigler and James P. Luton, Attorneys at Law, 138 1/2 East Center Street, Marion, Ohio 43302, for Appellant.*

*Harold R. Kemp, Attorney at Law, 88 West Mound Street, Columbus, Ohio 43215, for Appellee.*

MILLER, J.

This is an appeal by defendant-appellant, Charlene Sue Kaufman, from a judgment of the Court of Common Pleas of Marion County granting a divorce and division of marital property from plaintiff-appellee/cross-appellant, Martin Theodore Kaufman. Defendant asserts prejudicial error with regard to the valuation of certain marital property, the division of the marital property, conditions placed by the trial court upon the alimony award, and denial of a motion for attorney fees.

Plaintiff and defendant were married July 31, 1964 in Monroe, Michigan. Three children were born as the issue of the marriage, all of whom are now emancipated.

Plaintiff filed for divorce on November 20, 1986 on the ground that the parties had been separated for more than one year. Defendant filed her answer and cross-complaint alleging adultery on the part of plaintiff. The case was heard before a Referee who issued a report and recommendation, which was filed on October 1, 1987. Both parties filed objections to the report of the Referee and the trial court, upon hearing the objections, ordered the matter to be tried de novo.

After hearings were held on two separate dates, the trial court issued a Memorandum of Decision on May 18, 1988. Judgment was entered on June 16, 1988. In its decision, the trial court divided the property basically along lines of possession already agreed upon by the parties, valued the property, and determined the amount in possession of each party. Plaintiff was found to have received $61,747.39 more than plaintiff, and was ordered to pay half that amount to defendant plus $2,000.00 a month in sustenance alimony for 60 months or until the defendant died, remarried, or cohabitated with a male person who was not her spouse.

Defendant appealed from this judgment setting forth five assignments of error and plaintiff cross-appealed also setting forth five assignments of error.

Before addressing the specific assignments of error, we note that it is well settled law in Ohio that a trial court is "vested with broad powers in determining the appropriate scope of property awards in divorce actions." *Berish v. Berish* (1982), 69 Ohio St. 2d 318, 319; second, "A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion." *Kunkle v. Kunkle* (1990), 51 Ohio St. 3d 64, 67; and finally, "[T]he mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion." *Cherry v. Cherry* (1981), 66 Ohio St. 2d 348, 353.

We consider the first two assignments of error together.

1. THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR PREJUDICIAL TO THE APPELLANT WHICH AMOUNTED TO AN ABUSE OF DISCRETION IN MAKING AN INEQUITABLE DIVISION OF PROPERTY.

2. THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR PREJUDICIAL TO THE APPELLANT BY ACCEPTING A VALUATION OF THE APPELLEE-HUSBAND'S BUSINESS WHICH FAILED TO RECOGNIZE THE INCOME PRODUCING POTENTIAL OF THIS MARITAL ASSET.

Assignments of error one and two are primarily directed to the trial court's valuation of the R.I.K. Corporation of which the plaintiff is the sole stock holder. Defendant's differences with the trial court's valuation of the plaintiff's corporation are two-fold. First, defendant claims that the accounting method accepted by the trial court in placing a value on the corporation was in error, and second, that the trial court erred in computing the liabilities of the corporation. We will address the second contention first.

Plaintiff bought the corporation from his mother for $300,000 after she had removed virtually all of the corporation's liquid assets. Plaintiff paid $50,000 down, $15,000 of which came from the sale of a diaper service owned by both the plaintiff and defendant and the balance from a $35,000 bank loan. The $250,000 balance was secured by a promissory note signed by plaintiff and defendant payable to plaintiff's mother.

In a separate letter addressed to the plaintiff, and dated the same date as the promissory note, plaintiff's mother agreed that no demand for payment on the promissory note would be

made during her lifetime, in the absence of a disposition of the business, a sale of the corporate stock, or insolvency of the corporation. Furthermore, the letter stated that upon her death, the unpaid amount of the note would be included as a debt owed to her estate and that plaintiff's share of the estate would be applied to the satisfaction of the note.

Sometime after the sale of the corporation, plaintiff's mother made a $10,000 gift to all of her children. The plaintiff's gift was in the form of a $10,000 reduction in the balance due on the promissory note.

The trial court determined that the net value of the corporation at $165,784.39. The court arrived at this figure by reducing the value of the corporation in the amount of both the remaining balance on the promissory note ($240,000) and the $10,000 gift. We conclude that the trial court, in its broad discretion, did so properly.

Defendant contends that the $240,000 treated as a liability of the corporation is, in fact, a future inheritance of the plaintiff. Although R.C. 3105.18 requires the trial court to consider the expectancies and inheritances of the parties, the amount due on the note is not, as defendant claims, an inheritance during the marriage. Furthermore, defendant is not entitled to an award of a future interest in plaintiff's inheritance. "Under R.C. 3105.18, the inheritance is a factor to be considered in awarding... sustenance alimony, but it is not a current asset to be divided either at the time of the divorce or in the future." *Buckles v. Buckles* (1988), 46 Ohio App. 3d 102, 114. The anticipated inheritance from plaintiff's mother is not yet realized by the plaintiff, and should plaintiff's mother's estate be inadequate at her death to accomplish the goal of satisfying the promissory note, the plaintiff will be required to pay the note and the expected inheritance will never come into being.

Neither did the trial court abuse its discretion in crediting plaintiff with the amount of the $10,000 gift. As stated in *Buckles, supra,* at 111, property brought into the marriage is normally subject to division-of-property alimony, except when that property "is acquired by one spouse during the marriage by bequest, devise or gift from a third party unless such property so acquired was used for purposes of the marriage." Here, we cannot say that the $10,000 gift was used for purposes of the marriage. It was a gift in the form of a reduction on a debt owed by the plaintiff to the grantor of the gift, plaintiff's mother.

The defendant also asserts that the method for valuating the corporation offered by the plaintiff, and accepted by the trial court, was reversible error. In support of this claim, defendant cites a decision of this Court, *Collier v. Collier* (1987), 36 Ohio App. 3d 130. In *Collier, supra,* the trial court used a balance sheet method for valuation of the husband's interest in a professional corporation. This court reversed on the grounds that it was prejudicial error for the trial court to fail to take into consideration the income producing potential of the corporation. Here, the trial court also used the balance sheet method of valuation. The difference, however, between *Collier, supra,* and this case is that the professional corporation in *Collier, supra,* was formed for the primary function of funding a pension plan. The low or non-existent year end earnings of the corporation were actually sought since the bulk of the income produced by the corporation was either placed in the pension fund or paid as salary to its employees, namely the husband. In the case at bar, the corporation in question is run as a for-profit corporation. In placing a value on a for profit corporation for purposes of its division as marital property in the divorce action the balance sheet approach is a valid method.

In a similar argument, defendant asserts that the income figures presented on plaintiff's W-2 forms for the years 1986 and 1987 is evidence of undervaluation of the corporation. The income reported for those two years is sizable, especially in 1987. However, in return for his 1987 salary, plaintiff gave the corporation a note for $200,000, half of which was later replaced by a mortgage for $100,000, and half of which was to be drawn from his 1988 salary. Although plaintiff was paid a substantial salary by the corporation, the amount so paid was not so disproportionate to the value of the corporation as to indicate an abuse of discretion by the trial court in arriving at its evaluation of the corporation.

The defendant's first and second assignments of error are not well taken.

The defendant's third assignment of error states:

"3. THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR PREJUDICIAL TO THE APPELLANT BY GRANTING AN AWARD OF SUSTENANCE ALIMONY WHICH FAILS TO ALLOW COMPETITIVE

INTEREST ON THE PERIODIC PAYMENTS TO BE MADE TO THE APPELLANT OVER A FIVE YEAR PERIOD."

We first note that alimony payments are divided into two categories: "division of marital assets and liabilities, and periodic payments for support and sustenance." *Kunkle v. Kunkle* (1990), 51 Ohio St. 3d 64.

In support of this assignment of error, defendant again cites *Collier, supra,* particularly the following passage in the opinion: "We find that the trial court abused its discretion in ordering the division of property in this matter....we find it to be unreasonable to fail to allow interest on the periodic payments to be made to the appellant over an eleven-year period." *Id.* at 134.

*Collier, supra,* applies to monies to be paid over time in the division of marital property, not sustenance alimony. In effect, *Collier, supra,* allowed the non-possessing spouse (the wife) to collect a reasonable rate of interest on her portion of the marital property (the professional corporation) awarded to the husband. The husband was allowed to pay the wife her interest in the professional corporation in installments over an eleven year period. This installment plan was reasonable since it prevented the sale of the professional corporation, which was infinitely more valuable left intact and in the hands of the husband, to satisfy the property award. The allowance of interest to be charged on the balance remaining gave the wife full compensation for her portion of the marital property.

In the case at bar, appellee was ordered to pay the $30,873.70, which represented the difference of value in the actual award of marital property, within 90 days of entry of the judgment. No periodic payments on this amount were ordered.

We conclude that the defendant is not entitled to interest payments on the award of sustenance alimony for the five year period.

The defendant's third assignment of error is not well taken.

The defendant's fourth assignment of error states:

"4. THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR PREJUDICIAL TO THE APPELLANT IN MAKING THE ALIMONY AWARD SUBJECT TO AUTOMATIC TERMINATION IF THE APPELLANT COHABITS WITH A MALE PERSON NOT HER SPOUSE."

In the decree awarding sustenance alimony to the defendant over a five year period, the trial court placed restrictions on the award which stated that payments were to terminate on the defendant's death, remarriage or cohabitation with a male not her spouse. We also note that the trial court did not expressly reserve jurisdiction. Defendant correctly directs this court to the Ohio Supreme Court decision of *Stevens v. Stevens* (1986), 23 Ohio St. 3d 115, which dealt with the same type of restrictions on a sustenance alimony as the award now before us. In *Stevens,* the Supreme Court stated:

"*** the award was made subject to automatic termination in the event that appellant lived 'in a state of concubinage' and because the trial court did not retain any jurisdiction to modify the award had this occurred, it was error to limit the award in this manner. *** "

Furthermore, we note the dissenting opinion of Justice Douglas in *Stevens, supra,* which concurred on this point, and stated:

"[R]estitution should certainly bear no relationship to archaic requirements of chastity, particularly since such requirements have never been applied to men....This double standard has more than a modicum of unfairness."

From the foregoing, it is readily apparent that the Supreme Court has deemed restrictions on cohabitation to be proper only when the award of sustenance alimony is sought to be modified and not as an automatic termination of alimony. See also, *Ressler v. Ressler* (1985), 17 Ohio St. 3d 17. The defendant's fourth assignment of error is well taken.

The defendant's fifth assignment of error states:

"THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR PREJUDICIAL TO THE APPELLANT IN FAILING TO ALLOW REASONABLE EXPENSE MONEY AND ATTORNEY FEES."

The award of attorney fees is within the discretion of the trial court. See *Rand v. Rand* (1985), 18 Ohio St. 3d 356; *Cohen v. Cohen* (1983), 8 Ohio App. 3d 109. Considering the resources available to both parties, it was not an abuse of discretion on the part of the trial court to deny an award of attorney fees and expenses to the defendant.

Defendant's fifth assignment of error is not well taken.

The plaintiff's five assignments of error correspond to and assert the opposite of the five

raise by the defendant. Since we have thoroughly discussed all the arguments and disposed of each of defendant's assignments of error, we need not individually address plaintiff's assignments of error.

We reverse and set aside that portion of the trial court's judgment which terminates the sustenance alimony award in case of the defendant's cohabitation with a male not her spouse, but affirm the judgment in all other aspects.

*Judgment reversed in part and affirmed in part.*

SHAW and EVANS, J.J., concur.