OPINION
{¶ 1} Defendant-appellant, Carl W. Grody ("appellant"), appeals from the judgment entry decree of divorce issued by the Franklin County Court of Common Pleas, Division of Domestic Relations, on July 26, 2007.
 {¶ 2} Appellant and plaintiff-appellee, Elayna Grody ("appellee") were married on August 6, 1983, and had two children born as issue of their marriage, to wit: Kylee, born July 16, 1991, and McKenna, born July 19, 1994. Appellee filed her complaint for divorce on June 14, 2004. Appellant filed an answer and counterclaim for divorce on August 25, *Page 2 
2004. Hearings on this matter were held on February 17, April 4, 6, 12, 26, 27 and June 1, 2006. Judge Carol Squire presided over the trial. However, Judge Squire left the bench in January 2007, prior to issuing a decision in this case. Judge Christopher Geer assumed the bench in January 2007, and was notified in February that a decision in this matter had not been rendered. A status conference was held on February 27, 2007. On February 28, 2007, a judgment entry was rendered in which the trial court states the parties were given three options: (1) to have a new trial; (2) to have a summary trial; or (3) to have of transcripts of the record prepared and for Judge Geer to issue a decision based on same. According to the judgment entry, the parties chose option 3, as the entry states:
 The Court FURTHER FINDS that the parties have discussed in detail with their counsel of record, these options and that both Plaintiff and Defendant have, as their own voluntary act and free will and without coercion, elected to have a transcript of the original Trial prepared, have Judge Geer read same and then have Judge Geer prepare a Decision from same.
 The Court FURTHER FINDS that by electing to have Judge Geer read the transcript of the original Trial, the parties understand that Judge Geer will not have the ability to use physical observations when determining the credibility of any witnesses, including the parties themselves.
(Feb. 28, 2007 Entry, at 2.)
 {¶ 3} Further, the judgment entry states:
 It is therefore AGREED by and between the parties, ADJUDGED, and ORDERED as follows:
 1. That both Plaintiff and Defendant have, as their own voluntary act and free will, AGREED and it is hereby ORDERED that Judge Christopher J. Geer will read the transcript of the record of the original Trial, review the Joint Stipulations and any and all other exhibits introduced by both *Page 3 
the Plaintiff and Defendant at Trial, and then write a Decision therefrom.
Id. at 3.
 {¶ 4} After review of the record, the trial court issued its judgment entry decree of divorce on July 26, 2007. The trial court established a de facto termination date of the parties' marriage as June 14, 2004, and divided marital assets and debts in accordance with that date. Additionally, the trial court denied appellant's request for spousal support, and provided that each party is to be responsible for their own attorney's fees.
 {¶ 5} This appeal followed, and on appeal appellant brings six assignments of error for our review:
 ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT IN ITS JUDGMENT ENTRY DECREE OF DIVORCE (JULY 26, 2007) AND DECISION ON REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW (AUGUST 24, 2007) ERRED AND ABUSED ITS DISCRETION BY DETERMINING A DE FACTO TERMINATION OF MARRIAGE DATE PRIOR TO THE DATE OF THE FINAL HEARING AND BY VALUING AND DIVIDING ASSETS AND LIABILITIES AS OF THAT DE FACTO TERMINATION OF MARRIAGE DATE.
 ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT IN ITS JUDGMENT ENTRY DECREE OF DIVORCE JULY 26, 2007) AND DECISION ON REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW (AUGUST 24, 2007) ERRED AND ABUSED ITS DISCRETION OF THE DIVISION OF THE PARTIES' RETIREMENT ACCOUNTS AND OFFSET FOR SOCIAL SECURITY BENEFITS.
 ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT IN ITS JUDGMENT ENTRY DECREE OF DIVORCE (JULY 26, 2007) AND DECISION ON *Page 4 
REQUEST FOR FINDINGS OF FACT ND CONCLUSIONS OF LAW (AUGUST 24, 2007) ERRED AND ABUSED ITS DISCRETION IN DETERMINING THE VALUE OF THE MARITAL RESIDENCE KNOWN AS AND LOCATED AT 1706 LARAMIE DRIVE, POWELL, OHIO.
 ASSIGNMENT OF ERROR NO. 4
 THE TRIAL COURT IN ITS JUDGMENT ENTRY DECREE OF DIVORCE (JULY 26, 2007) AND DECISION ON REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW (AUGUST 24, 2007) ERRED AND ABUSED ITS DISCRETION BY FAILING TO AWARD DEFENDANT SPOUSAL SUPPORT IN ACCORDANCE WITH THE PROVISIONS OF OHIO REVISED CODE SECTION 3105.18.
 ASSIGNMENT OF ERROR NO. 5
 THE TRIAL COURT IN ITS SHARED PARENTING DECREE AND COURT ORDERED SHARED PARENTING PLAN (JULY 26, 2007), DECISION ON REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW (AUGUST 24, 2007) AND SUA SPONTE 60(A) ORDER CORRECTING DECREE OF JULY 7, 2007 (AUGUST 24, 2007) ERRED AND ABUSED ITS DISCRETION BY FAILING TO ORDER THE EFFECTIVE DATE OF THE CHILD SUPPORT OBLIGATION CONSISTENT WITH THE DE FACTO TERMINATION OF MARRIAGE DATE.
 ASSIGNMENT OF ERROR NO. 6
 THE TRIAL COURT IN ITS JUDGMENT ENTRY DECREE OF DIVORCE (JULY 26, 2007) AND DECISION ON REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW (AUGUST 24, 2007) ERRED AND ABUSED ITS DISCRETION BY FAILING TO AWARD THE DEFENDANT HIS REASONABLE ATTORNEY'S FEES, COSTS AND LITIGATION EXPENSES IN ACCORDANCE WITH THE PROVISIONS OF OHIO REVISED CODE SECTION 2105.73.
 {¶ 6} In his first assignment of error, appellant contends the trial court abused its discretion when it determined the de facto termination date of the parties' marriage to be *Page 5 
June 14, 2004, rather than the date of the final hearing. The valuation of the marital estate for purposes of equitable division and support is the duration of the marriage, which is defined by statute. R.C. 3105.171(A) provides, in relevant part:
 (2) "During the marriage" means whichever of the following is applicable:
 (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.
 {¶ 7} As recognized by the Supreme Court of Ohio in Berish v.Berish (1982), 69 Ohio St.2d 318, the circumstances of a particular case may make a date prior to trial more equitable for the determination and valuation of marital assets. In order to achieve equity, "a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or de facto termination of the marriage, where reasonable under the facts and circumstances presented in a particular case." Id. at 321. (Emphasis sic.) This court has construed "the Berish and Day cases to hold that an alternative valuation date should be employed when the totality of the circumstances and equitable considerations between the parties demonstrate that there was a clear and bilateral breakdown of the marriage and the parties have ceased contributing to each other for each other's benefit as would partners in a shared enterprise or joint undertaking." *Page 6 Rogers v. Rogers (Sept. 2, 1997), Franklin App. No. 96APF10-1333, discretionary appeal not allowed by (1998), 81 Ohio St.3d 1420.
 {¶ 8} Moreover, a court's determination as to when to apply a de facto termination date of a marriage falls well within the broad discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. Heyman v. Heyman, Franklin App. No. 05AP-475,2006-Ohio-1345, at ¶ 32. It is well-established that an abuse of discretion connotes more than a mere error of law or judgment, but rather, implies a court's decision is unreasonable, arbitrary or unconscionable. Rogers, supra. In Rogers, this court reiterated there are no "flat rules" in choosing a date of valuation and that the date of separation does not automatically demonstrate a de facto termination of a marriage. Id.
 {¶ 9} After examining a number of cases from various Ohio courts, this court in Rogers found several common factors that are considered in determining the propriety of declaring a de facto date of marriage termination. As further explained in Heyman, supra, "we noted [inRogers] that factors such as whether the parties made a clear and bilateral decision to separate, whether the marriage was irretrievably broken at the time of separation, whether the separation was friendly, whether the parties engaged in sexual relations after the date of separation, whether either party had begun to cohabitate with another following separation, and whether the parties maintained separate financial arrangements were important indications of the appropriateness of applying a de facto date of termination." Id. at ¶ 33.
 {¶ 10} The point of contention in the matter at hand is that appellee argues for June 14, 2004, the day she filed the divorce complaint, as the de facto marriage *Page 7 
termination date, while appellant argues that the date of the final hearing on the divorce complaint should be the marriage termination date. The trial court reviewed the factors in Rogers and the evidence presented. After such review, the trial court found June 14, 2004 to be the de facto termination date of marriage. In doing so, the trial court referred to specific portions of the transcript, and noted the parties' prior dissolution process that was not completed because of distrust concerns. The trial court noted evidence pertaining to the "ongoing difficult relationship" of the parties, and the failure to resolve issues other than those pertaining to the children. The trial court recognized that though appellant moved out of the residence and then back in after approximately nine months, he did so only "due to financial constraints." Further, the trial court found that in light of the other evidence, it was not persuaded by the fact the parties did not maintain separate residences as an indication that they did not intend to terminate the marriage at the time the complaint was filed.
 {¶ 11} Appellant suggests the trial court looked at only "unilateral" acts of the parties to make its determination. In support of his argument that the de facto termination date of marriage should be the final hearing date, appellant focuses on the evidence in the record that the parties continued to reside together. However, the trial court was clearly aware of this fact as it discussed it in its judgment entry and explained why the parties' living arrangements was not the determinative factor for its decision.
 {¶ 12} Though there may be a factor present to support a different termination date of the marriage, as we stated in Rogers, it is the totality of the circumstances with which the trial court is concerned, and an abuse of the trial court's discretion with which we are concerned. After review of the evidence, we do not find an abuse of discretion here. *Page 8 
 {¶ 13} Further, appellant asserts using a de facto termination of marriage date resulted in a valuation and division of marital assets that was clearly inequitable to him. According to appellant, by using the June 14, 2004 date, appellee received marital property valued at $29,137.42, while appellant received marital property valued at only $19,183.42. Additionally, using the de facto termination of marriage date resulted in appellant receiving $26,835 of non-marital debt.
 {¶ 14} To the extent appellant suggests it was an abuse of discretion to use the de facto termination date of marriage to value the parties' marital assets and liabilities, we find no merit to appellant's position. It is the duration of marriage that determines the valuation of the marital estate. Therefore, once the duration of marriage is established, assets and liabilities are determined in accordance with those dates. However, given that we have determined there was no abuse of discretion in the trial court's de facto termination of marriage date, we find no abuse of discretion in the trial court's valuation and division of marital assets in accordance with that date.
 {¶ 15} Accordingly, we overrule appellant's first assignment of error.
 {¶ 16} In his second assignment of error, appellant contends the trial court erred in its division of the parties' retirement accounts and offset for social security benefits. Specifically, appellant argues the trial court's analysis of social security benefits was not in accordance with the holding of Neville v. Neville, 99 Ohio St.3d 275,2003-Ohio-3624, and its application was unreasonable and arbitrary.
 {¶ 17} A trial court has broad discretion in the allocation of marital assets, and its judgment will not be disturbed absent an abuse of that discretion. Id. In Neville, the Supreme Court of Ohio reiterated that social security benefits are not subject to division in *Page 9 
a divorce proceeding, but went on to hold that "in making an equitable distribution of marital property in a divorce proceeding, a trial court may consider the parties' future social security benefits in relation to all marital assets." Id. at syllabus. Contrary to appellant's suggestion otherwise, Neville stands for the proposition that a trial court is permitted, not mandated, to consider social security benefits when determining the equitable division of assets. Bolden v. Bolden, Geauga App. No. 2006-G-2736, 2007-Ohio-6249.
 {¶ 18} Here the parties stipulated the value of appellee's Ohio Public Employee's Retirement System ("PERS") account to be $17,945.54 as of June 2004, and the parties further agreed that each party shall receive an equal share of same. Additionally, the parties stipulated that appellee had a present value of social security benefit of $26,381, and appellant had a present value social security benefit of $4,028. Based on Neville, the trial court found it appropriate to consider the value of social security benefits in making an equitable division of property. After considering any offset from these benefits, the trial court concluded it would be "fundamentally inequitable" to make an offset of one-half of the difference as requested by appellant. (July 26, 2007 Judgment Entry, Decree of Divorce, at 6.) Further, the trial court stated it considered the values to the parties, other factors impacting benefits, and other property subject to distribution, and found "no further offset of social security benefits is appropriate." Id.
 {¶ 19} The record reflects the trial court performed the very action permitted by Neville, i.e., consideration of the social security benefits in making an equitable division of marital property. Though it declined to offset the property division by the difference in the *Page 10 
social security benefits, after examination of the overall record, we are unable to find an abuse of discretion. Accordingly, we overrule appellant's second assignment of error.
 {¶ 20} In his third assignment of error, appellant contends the trial court erred in determining the value of the marital residence to be $125,000. A trial court has broad discretion in developing a measure of value for property in a divorce case. Mechwart v. Mechwart (Sept. 23, 1993), Franklin App. No. 93AP-92, citing Willis v. Willis (1984), 19 Ohio App.3d 45. "While a reviewing court must be vigilant in insuring that a lower court's determination is fair, equitable and in accordance with law, a reviewing court may not substitute its judgment for that of the trier of fact unless the lower court's decision constitutes an abuse of discretion." Id. Questions of fair market value are to be determined by the trier of fact. Id.
 {¶ 21} With respect to the marital residence located at 1706 Laramie Drive, Powell, Ohio, appellee submitted an appraisal of $125,000, and appellant submitted an appraisal of $152,800. The parties stipulated that each party was submitting their own appraisal values in an effort to eliminate the need for expert testimony. Consequently, testimony presented about the marital residence was extremely limited. In determining the value of the marital residence, the trial court looked to the basis of the appraisals. The trial court determined appellee's appraisal was completed by an appraisal company, while appellant's appraisal was "the amount that [appellant] believes `the value of the marital residence at Laramie Drive is.'" (July 26, 2007 Judgment Entry at 7.) Based on this, the trial court found appellee's to be the more credible number and used it for the valuation. *Page 11 
 {¶ 22} Appellee testified that her appraisal was completed by Early Appraisal Service in February 2006. Appellant's only testimony relating to his appraisal is the following:
 Q: Mr. Grody, to try and save us some time, we've already stipulated in another document what you believe the value of the marital residence at Laramie Drive is. Correct?
 A: Yes.
(Tr. at 261.)
 {¶ 23} It was the parties' decision to submit bare valuations of the marital residence for the trial court's review. The stipulation submitted contains no other information regarding when and/or from where the numbers came. Further, the parties agreed to have the trial court determine this matter based on the transcripts, despite being offered the opportunity to introduce additional evidence or even to have a new trial. Though appellant now complains about the trial court's handling of the record, we note the trial court used what the parties stipulated to. While there was a discrepancy in the two property valuations, it was in the trial court's discretion to determine which valuation was more credible. The trial court made its determination based on the evidence before it. Mechwart, supra. After review, we cannot say the trial court abused its discretion in accepting appellee's valuation of the property at $125,000. Accordingly, we overrule appellant's third assignment of error.
 {¶ 24} In his fourth assignment of error, appellant contends the trial court erred in failing to award spousal support in accordance with R.C. 3105.18. Specifically, appellant states the trial court did not consider all of the factors set forth in R.C. 3105.18, nor did it provide sufficient detail to enable a review from this court. *Page 12 
 {¶ 25} R.C. 3105.18(B) provides that, upon the request of either party, the trial court may award spousal support to that party. R.C. 3105.18(C) provides that the trial court shall consider the following factors in regard to such an award:
 (1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 (b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
 (d) The retirement benefits of the parties;
 (e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job *Page 13 
experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
 (2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.
 {¶ 26} A trial court has broad discretion to determine the proper amount of spousal support based on the particular facts and circumstances of each case. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64,67. Stated alternatively, a trial court's award of spousal support will not be disturbed absent an abuse of discretion. Id. "The trial court is not required to comment on each statutory factor. Rather, the record need only show the court considered them in making its award."McClung v. McClung, Franklin App. No. 03AP-156, 2004-Ohio-240, at ¶ 21. "When a trial court specifically indicates that it has reviewed the appropriate statutory factors, there is a strong presumption that the factors were indeed considered." Id. at ¶ 26, citing Huffman v.Huffman, Franklin App. No. 01AP-726, 2002-Ohio-2565, at ¶ 25.
 {¶ 27} In the present case, the trial court expressly stated in its judgment entry that it had "considered all of the factors of Ohio Revised Code 3105.17(C)(1)" and it found that "an award of spousal support is not reasonable or appropriate given the facts in this case." (July 26, 2007 Judgment Entry, at 14.) The trial court indicated that among other *Page 14 
things, it considered the parties' incomes, earning abilities, age, health conditions, length of marriage, standard of living, relative educations, and the parties' assets and liabilities.
 {¶ 28} Upon review of the record, we cannot find the trial court's analysis is lacking or that the trial court abused its discretion in denying appellant's request for spousal support as the trial court clearly reviewed the requisite factors in determining that spousal support should not be awarded. Accordingly, we overrule appellant's fourth assignment of error.
 {¶ 29} In his fifth assignment of error, appellant contends the trial court erred in failing to order the effective date of the child support obligation in accordance with the de facto termination of marriage date. Issues of child support are reviewed under an abuse of discretion standard. Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390, citingBooth v. Booth (1989), 44 Ohio St.3d 142, 144, and this includes determining the effective date of the order.
 {¶ 30} The purpose of establishing a de facto termination date of marriage is to make an equitable determination and valuation of marital assets. The purpose of child support is to meet the current needs of a minor child. Carnes v. Kemp, 104 Ohio St.3d 629, 2004-Ohio-7107, at ¶ 10. While these dates may coincide, we note we are not aware of, nor has appellant provided any authority to support his contention that a child support obligation must begin in accordance with a de facto marriage termination date established for the purpose of dividing marital property.
 {¶ 31} In the matter herein, the parties submitted a stipulated joint shared parenting plan delineating all parental rights and responsibilities for the care of the two minor children. The trial court ordered that appellee was to pay $292.50 per month for *Page 15 
child support, plus the processing charge of $5.85. Appellant filed a request for findings of fact and conclusions of law with regard to the calculation, amount, and effective date of the child support order. Upon review, the trial court noted an erroneous worksheet was used to determine the child support obligation and, also, a specific effective date for the child support to begin was absent from the judgment entry. Therefore, the court sua sponte corrected the order to reflect that appellee was to pay $307.87 per month for child support, plus a $6.16 processing charge, effective August 1, 2007, in accordance with the effective date of the joint shared parenting plan. According to appellant, however, the child support obligation should have been effective June 14, 2004, which was the de facto termination of marriage date established by the trial court, and in not utilizing this date, the trial court abused its discretion. We disagree.
 {¶ 32} At the time of trial, the parties stipulated appellee had a gross income of $50,000 in 2005, and they further agreed to impute an income of $20,000 to appellant. The trial court established the court-ordered shared parenting plan effective July 27, 2006, and it is logical to conclude the child support obligation being established by the court would be effective at this time as well. Further, the parties continued to reside together at the time of the final hearing, and the temporary orders required appellee to assume the mortgage and utilities on the property. The trial court ordered child support to begin at the same time it ordered appellant to vacate the marital residence. Upon review, we find no abuse of discretion in the trial court's effective date of the child support obligation. Accordingly, we overrule appellant's fifth assignment of error.
 {¶ 33} In his sixth assignment of error, appellant contends the trial court erred in failing to award him attorney's fees and litigation costs in accordance with R.C. 3105.73. *Page 16 
Appellant argues the trial court did not address any of the requisite statutory factors, and that based on the statutory provisions, the trial court should have made an award of attorney's fees payable by appellee to appellant.
 {¶ 34} R.C. 3105.73(A), provides, in pertinent part:
 In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.
 {¶ 35} A party seeking an award of fees in a divorce action bears the burden of proving the reasonableness of the fees sought. McCord v.McCord, Franklin App. No. 06AP-102, 2007-Ohio-164, at ¶ 14, citingSwanson v. Swanson (1976), 48 Ohio App.2d 85. Any subsequent award of attorney's fees lies within the sound discretion of the trial court.Rand v. Rand (1985), 18 Ohio St.3d 356, 359. Therefore, we may reverse the trial court's decision only upon a showing that the court abused its discretion and acted unreasonably, arbitrarily or unconscionably.Dunbar v. Dunbar (1994), 68 Ohio St.3d 369, 371.
 {¶ 36} In considering the request for attorney's fees, the trial court noted the provisions of R.C. 3105.73, and noted the parties' stipulation that the amount of fees submitted by each party was reasonable. The trial court stated that based on the testimony of the parties and the evidence presented, an award of fees was not appropriate. Therefore, the trial court ordered each party responsible for their own attorney's fees. *Page 17 
 {¶ 37} Upon review of the record, we find no error in the trial court's analysis or conclusion on this issue. As required by R.C. 3105.73, the trial court considered whether an award of attorney's fees to either party would be equitable, and concluded that it would not. Other than being dissatisfied with the trial court's ruling, appellant does not direct us to, nor do we find, an abuse of discretion in the trial court's determination. Heyman, supra. Accordingly, we overrule appellant's sixth assignment of error.
 {¶ 38} For the foregoing reasons, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is hereby affirmed.
Judgment affirmed.
 PETREE and KLATT, JJ., concur. *Page 1